

# LIVINGSTON COUNTY ASSOCIATION OF REALTORS® STANDARD PURCHASE AGREEMENT

PURCHASER (legal name) __GENTRY SALES INC__ Marital Status _____

PURCHASER (legal name) _____ Marital Status _____

PURCHASER'S Current Address __193 S HUGHES__ __HOWELL__ __MI__ __48843__

SELLING OFFICE __LIVINGSTON REAL ESTATE__ Phone __5175480001__ Office ID __191474__

SELLING AGENT __DIANA GENTRY__ Phone __5175480001__ License# __191474__

LISTING OFFICE __LIVINGSTON RE__ Phone __5175480001__ Office ID __191474__

LISTING AGENT __DIANA GENTRY__ Phone __5175480001__ License# _____

**1. THE PURCHASER** hereby offers and agrees to purchase, subject to easements and restrictive covenants of record, the following property in the

☐CITY ☐VILLAGE ☒TOWNSHIP of __COHOCTAH__, County of __LIVINGSTON__, Michigan described as follows: __Part of SW 1/4 of Sec 24, T4N, R4E (Full legal attaced and on file)__ _____ also known as __1011 JONES ROAD__ __Howell__ Tax ID# __4702-24-300-007__ together with all fixtures and appurtenances in or on the premises (unless specifically excluded herein) including, if any, lighting fixtures, shades, blinds, drapery/curtain and drapery/curtain hardware and rods, attached mirrors and all bathroom mirrors, attached generators, attached humidifier, ventilating fixtures, screens, storm doors and windows, garage door openers and transmitters, water softener (rental units excepted) and water treatment systems, built in appliances, heating unit including wood stove and fireplace gas logs, mail box, awnings, all TV antennae, landscaping, flagpole, all hardwired audio/security systems and related equipment, central vacuum and attachments, as well as the following personal property for which a bill of sale shall be given.

Included: __Appliances on site as of 5-17-18__

Excluded: _____

and to pay therefore the sum of __Sixty-Five Thousand__ DOLLARS ($ __65,000.00__ ).

Unless otherwise noted, Seller shall deliver a warranty deed conveying marketable title to Purchaser at closing.

**2. THIS OFFER IS MADE SUBJECT TO FINANCING TERMS AND SATISFACTORY COMPLETION OF THE FOLLOWING CONDITIONS AS MARKED.**

a) ☐CASH SALE: Payment of purchase money to be made by wire transfer or equivalent funds.

b) ☐CASH SALE WITH NEW MORTGAGE: This Purchase Agreement is contingent upon Purchaser being able to secure a

☐Conventional ☐FHA ☐203K ☐VA ☐Rural Development ☐Seller Financed

mortgage in the amount of $_____ OR _____ % of sale price for a term of _____ years and pay

$_____ OR _____ % of sale price down, plus mortgage costs, prepaid items and adjustments in cash.

Purchaser's Initials _____ Seller's Initials _____ Page 1 of 6

©2016 Livingston County Association of REALTORS®
20-03016 2016 Red Doc 58 3rd. Filed 10/13/20 Entered 10/13/20 15:59:58 Page 1 of 14
Instanetforms

Ex. C

Purchaser further agrees to apply for such mortgage within _____ calendar days from acceptance of this Purchase Agreement at Purchaser's own expense and shall comply with all requirements of said lending institution in a timely manner. If a loan approval from the lending institution cannot be obtained at no fault of the Purchaser within _____ days from the date of acceptance of this Purchase Agreement, this Purchase Agreement may be declared null and void by the Seller and Deposit shall be returned to Purchaser. Receipt of loan approval from the Purchaser's lending institution within time limit will eliminate this contingency.

c) ☐OTHER: See attached LCAR Financing Addendum

**3. EARNEST MONEY DEPOSIT** The Broker is hereby authorized to present this offer and the Deposit of $____1,000.00____:
☐CASH   ☐CHECK # _____   ☐OTHER _____.
To be held by ☒Selling Broker OR ☐____upon bankruptcy court approval of P/A____, which deposit shall be applied to the purchase price at closing.

If held by Selling Broker, Broker shall comply with the Michigan Occupational Code and related rules.

If the sale is not consummated, any release of the Purchaser's Deposit will require a mutual release of the Purchase Agreement signed by all parties.

**4. POSSESSION** (Check one box below)
☒To be given at closing

☐To be given on or before_____ days after closing subject to the rights of tenants, if any. From the day after closing through the day of vacating the property as agreed, Seller shall pay as indicated _____per day. The Escrow Agent shall retain from the amount due to Seller at closing the amount equal to_____ days of said occupancy charge, paying to Purchaser the amount due and returning to Seller the unused portion as determined by date property is vacated and keys surrendered to Listing Broker. The parties acknowledge that the Brokers and/or Escrow Agent have no obligation implied or otherwise for seeing that the property is vacated on the date specified or for the condition of the property, and may be acting only as an Escrow Agent holding the occupancy deposit. From the date of closing, Purchaser will maintain hazard insurance on the property and Seller will maintain insurance for liability and Seller's personal property. Purchaser is not responsible for damage or injury to Seller or Seller's personal property. Seller will not be required to pay for losses covered by Purchaser's hazard insurance policy. However, Seller will pay the deductible on Purchaser's hazard insurance for any claims made while Seller is in possession which are attributable to Seller's acts or omissions.

☐See attached LCAR Occupancy Addendum

**5. PROPERTY INSPECTION(S)** Purchaser shall have the option to inspect and examine the property at Purchaser's expense. This contingency to be removed on or before __0__ days after acceptance of this Purchase Agreement. Purchaser's examination may include, but is not limited to, inspections and tests relating to building structure, mechanical systems, environmental items, water, septic, pest or any other matter Purchaser may deem necessary for Purchaser's intended use. Purchaser shall restore the property to its prior condition after examination. If Purchaser is not satisfied with the results of any examination for any reason during the inspection period, Purchaser shall notify Seller in writing that Purchaser (a) declares this agreement null and void and Deposit shall be returned to Purchaser or (b) request Seller to make specific repairs to remedy claimed defects with a copy of any report that pertains to the request. Purchaser's failure to notify Seller of Purchaser's dissatisfaction within the inspection period shall constitute a waiver of this inspection contingency and Purchaser shall accept the property AS IS.

If Seller is notified during the inspection period of Purchaser's dissatisfaction and request for specific repairs, Seller shall notify Purchaser in writing within __0__ days that Seller (a) will repair or provide for repair to eliminate the defects claimed or (b) is unwilling to repair or provide for repair. If Seller declares unwillingness to repair or provide for repair, Purchaser shall have _____ days from receipt of Seller's notice of unwillingness to (a) accept property AS IS or (b) declare the Purchase Agreement null and void and Deposit shall be returned to Purchaser.

PURCHASER ACKNOWLEDGES THAT BROKER/AGENT HAS RECOMMENDED PURCHASER OBTAIN AN INSPECTION OF THE PROPERTY.

☒Purchaser does not choose to inspect or examine the property and accepts the property AS IS.

Purchaser's Initials _____ Seller's Initials _____ Page 2 of 6

20-03012-dof   Doc 50-3   Filed 10/13/20   Entered 10/13/20 15:59:58   Page 2 of 14

**6. TITLE INSURANCE** Seller shall provide Purchaser at Seller's expense an owner's policy of title insurance from a title company of Seller's choice in the amount of the purchase price. Said policy to be: (Check one box below)

☐ With Standard Exceptions

☒ Without Standard Exceptions     (if chosen owner's policy is unavailable then a With Standard Exceptions Policy shall be issued)

☐ Expanded Coverage     (if chosen owner's policy is not available then a Without Standard Exceptions Policy shall be issued)

(Check one box below)

☐ Seller     ☐ Purchaser     to pay cost of survey if required to obtain chosen owner's policy.

Seller will apply for a commitment for title insurance within 7 calendar days after the date of acceptance of this Purchase Agreement. Upon receipt of the commitment, Purchaser shall have 7 calendar days to provide Seller with written notice of any objections. Seller will then have 30 days after receiving written notice to remedy the claimed defects. If the Seller is unable or unwilling to remedy the defects within 30 days, this Purchase Agreement shall terminate and the Deposit shall be returned to Purchaser or the Purchaser may waive the defect and complete this transaction.

When applicable, Purchaser may obtain a loan policy from a title company of Purchaser's choice.

**7. DEFAULT** Failure to perform any obligation of this Purchase Agreement by Seller or Purchaser shall constitute default. If Purchaser defaults, Seller may, at Seller's option, terminate the Purchase Agreement and pursue all available legal and equitable remedies or seek forfeiture of the Deposit as liquidated damages. If Seller defaults, Purchaser may pursue all available legal and equitable remedies and may also terminate the agreement and seek a refund of the Deposit.

**8. CLOSING COSTS** Unless otherwise provided in this Purchase Agreement, it is agreed that Seller shall pay all state and county transfer taxes and costs required to convey marketable title. Unless otherwise provided in this Purchase Agreement, Purchaser shall pay the cost of recording the deed and/or security interest, all mortgage closing costs required by lender, and any closing fee charged by the title insurance company/agency that issues the owner's and/or loan policy in a lender financed sale. Seller and Purchaser shall split equally any closing fees charged by the title insurance company/agency in a cash or seller financed sale. Any transfer or status letter fees charged by the homeowners or condominium association shall be split equally between Purchaser and Seller.

At closing, Seller agrees to contribute up to $ ___0.00___ or _____ % of the purchase price toward Purchaser's closing costs, prepaid items, property tax prorations, escrows, insurance and/or any other fees allowable by lender.

**9. PRORATED ITEMS** Seller shall be responsible for all real estate taxes for years prior to the year in which the closing occurs and the Purchaser shall be responsible for all real estate taxes for years after the year in which the closing occurs. Taxes for the year in which the closing occurs shall be prorated such that Seller is responsible for that portion of the taxes through and including the date of closing. For purposes of this paragraph, taxes shall be deemed paid in advance based on due date of July 1 for summer taxes (covering the period July 1 through the following June 30) and December 1 for winter taxes (covering the period December 1 through the following November 30).

Purchaser shall assume the balance of all assessments which have been assessed or levied against the property by any public agency, taxing unit, homeowner's association, or condominium association. Any rent, homeowner's association dues, condominium dues, or assessment installment payments not otherwise included in the tax bills shall be prorated and adjusted to the date of closing.

☐ In lieu of the tax proration method set forth in paragraph 9 above, see attached Specific Contingencies/Terms Addendum.

**10. FEES OR CONSIDERATIONS** Purchaser and Seller hereby acknowledge that Broker(s) may accept a fee or consideration with regard to listing contract, buyer broker contract, placement of a home warranty, or any other ancillary products or services arising from this transaction.

Purchaser's Initials _____ Seller's Initials _____ page 3 of 6

©2016 Livingston County Association of REALTORS®

**11. CONDITION** Until possession is delivered, Seller agrees to keep the property in substantially the same condition as of the date of this Purchase Agreement and agrees to maintain heating, well, septic, plumbing, electrical system, landscape irrigation system and other equipment in normal working order; to keep the roof watertight and maintain the grounds. Seller agrees to keep all utility services operating until possession is delivered. Upon vacating the property, Seller agrees to remove all debris and leave the property in "broom clean" condition. In the event the property herein has been winterized, it shall be the obligation and expense of Seller to de-winterize the property prior to closing. Purchaser has a right to a walk-through inspection of the property within 72 hours prior to closing. This walk-through will provide Purchaser with an opportunity to confirm that this paragraph has been complied with and should not be deemed an opportunity to renegotiate the terms and conditions of this Purchase Agreement.

**12. HEIRS, SUCCESSORS AND ASSIGNS** This Purchase Agreement binds Seller, Seller's personal representatives, heirs, and anyone succeeding to Seller's interest in the property. Purchaser shall not assign this Purchase Agreement without Seller's prior written consent.

**13. RELEASE** Purchaser and Seller acknowledge that the Broker(s), their respective agents, employees and representatives have made no representations concerning the condition of the property covered by this Purchase Agreement or marketability of title. Purchaser and Seller release, indemnify and hold harmless the Brokers, their respective agents, employees and representatives, with respect to all claims arising out of or related to this Purchase Agreement, addenda and/or counter-offers. This release also includes, but is not limited to, all claims arising from any purported representations as to the physical and environmental condition of the property or marketability of title and special assessments covered by this Purchase Agreement. Purchaser and Seller acknowledge that Broker(s), their respective agents, employees and representatives are not acting as appraisers, builders, accountants, environmentalists, inspectors, tax advisors or attorneys.

**14. LIMITATION** Purchaser and Seller agree any and all claims and/or lawsuits which they may have against the Brokers, their respective agents, employees and representatives relating to their services must be filed no more than 6 months after the date of closing of the transaction described in this Purchase Agreement. Purchaser and Seller waive any statute of limitations to the contrary.

**15. ELECTRONIC SIGNATURES/COMMUNICATION** Purchaser and Seller acknowledge and agree that this Purchase Agreement, any amendment or modification of this Purchase Agreement and/or any written notice or communication in connection with this Purchase Agreement may be delivered to Seller in care of Listing Broker and Purchaser in the care of the Selling Broker via electronic mail or by facsimile. Any such communication shall be deemed delivered at the time it is sent or transmitted. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party. Seller represents and warrants an electronic email address has been provided to the listing broker from which seller may receive electronic mail. Purchaser represents and warrants an electronic email address has been provided to selling broker from which purchaser may receive email.

**16. COUNTERPARTS** This Purchase Agreement may be signed in any number of counterparts with the same effect as if the signature of each counterpart were upon the same instrument.

**17. GENERAL PROVISIONS:**
   a. This is a legally binding contract and all parties acknowledge that they have been advised to have an attorney review the transaction on their behalf.
   b. Principal Residence Exemption(PRE):

The Seller represents the PRE ☐ IS IN EFFECT for this property and taxes will be prorated accordingly   OR

☒ IS NOT IN EFFECT for this property and taxes will be prorated accordingly.

Purchaser's Initials _____  Seller's Initials _____  Page 4 of 6

©2016 Livingston County Association of REALTORS®

## 18. ADDITIONAL TERMS/CONDITIONS (Check if applicable)

☒ Agency Disclosure Form attached.

☒ Seller's Disclosure Form received.

☒ Lead-based Paint Disclosure received.

☒ Fuel in tank(s)   ☒ Is included in the sale price   ☐ Is not included in the sale price and fuel shall be prorated at time of Possession.

☐ Escrow Agent shall retain $300.00 from Seller at closing for water/sewer charges to date of occupancy, if applicable. When the final bill is paid any unused portion will be returned to Seller.

☐ Contingency on sale and closing of Purchaser's property (no offer pending) (See attached LCAR Contingent on Sale and Closing of Purchaser's Property Addendum).

☐ Contingency on closing of sale on Purchaser's property (sale pending) (See attached LCAR Contingent on Sale and Closing of Purchaser's Property Addendum).

☐ This is a back-up offer (See attached Specific Contingencies/Terms Addendum).

☐ Appraisal – This Purchase Agreement is subject to the property appraising at purchase price or higher. Said appraisal to be paid for by Purchaser. If property does not appraise at purchase price or higher, Purchaser shall have the option to declare this Purchase Agreement null and void and Deposit shall be returned to Purchaser.

☐ Subject property abuts a private road which has not been accepted as a public road and is not required to be maintained by the County Road Commission or other public or municipal body.

☒ Offer is void if not accepted by _____7-15-18_____.

☒ Closing of this purchase to be on or before _____Sept 15, 2017_____ at Listing Broker's office or location of Seller's choice.

☐ Home Warranty  ☒ Excluded  ☐ Included  ☐ To be paid for by _____.

☐ Attorney package of the closing documents required at least 3 days prior to closing.

☐ FHA or VA Financing Addendum required (See attached addendum).

☒ Other addendum(s) attached _____See addendums #1 & #2_____.

## 19. LAND DIVISION ACT (For unplatted land only):
Seller and Purchaser agree that the following statements shall be included in the deed at the time of delivery:

(a) The grantor grants to the grantee the right to make _____0_____ (insert "All", "Zero" or a specific number, as appropriate) division(s) under section 108 of the Land Division Act, MCL 560.108.

(b) This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan right to farm act.

**CAUTION:** If the space contained in subparagraph (a) above is left blank on the deed, the deed will NOT grant Purchaser the right to any divisions.

## 20. OTHER TERMS/CONDITIONS

**Purchaser is licensed real estate broker. See Addendum #1 and #2 for additional conditions and contingencies**

Purchaser's Initials _____  Seller's Initials _____  Page 5 of 6

©2016 Livingston County Association of REALTORS®

**21. ENTIRE AGREEMENT** Purchaser and Seller agree to the following: the term "Purchase Agreement" as used herein includes any counter-offers made by the parties to which there has been mutual and final acceptance; this Purchase Agreement and any addenda constitutes the entire agreement between the parties; there are no other written or oral understandings between the parties; this Purchase Agreement supersedes any and all prior purchase agreements, understandings or representations made by the parties or their agents. **TIME IS OF THE ESSENCE.**

_Century Sales Inc  5-71-18_
Purchaser / Date
_By Diana Gentry, President_
_Diana Gentry_
Print name

_____
Purchaser                Date

_____
Print name

**SELLER ACCEPTANCE** ☐ As Written-No Changes    ☐ See Counter Offer Addendum

_[signature]_ _6/4/18_
Seller             Date

_____
Seller            Date

_____
Print name

_____
Print name

Seller Address_____

Disclaimer: This form is provided as a service of the Livingston County Association of Realtors®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Livingston County Association of Realtors® is not responsible for use or misuse of the form, for misrepresentation or for warranties made in connection with the forms.

# ADDENDUM #1

In reference to the ☒ PURCHASE AGREEMENT, ☐ EXCHANGE AGREEMENT, ☐ LEASE,
☐ COUNTER OFFER- covering the ☒ real property, ☐ business, ☐ premises - commonly
known as    1011   JONES ROAD HOWELL MI 48855

dated _____ 05/17/18 _____ between _____ GENTRY SALES INC _____

and _____ EASTERN MICHIGAN BANKRUPTCY COURT _____

the undersigned parties hereby agrees as follows:

1. Offer to be conditionally accepted by SAM SWEET, Eastern Michigan Bankruptcy Trustee subject to final approval by Judge Opperman of Eastern Michigan Bankruptcy Court

2. Upon approval it is agreed that the Eastern Michigan Bankruptcy Court, Judge Opperman and Sam Sweet will dismiss all cases now pending before the court that involve DIANA GENTRY, CHRIS WYMAN and GENTRY SALES INC and all other corporations and DBA's related to DIANA GENTRY with the following case numbers of:
Chris Wyman #12-03341, 12-03347 and 14-03017
Diana Gentry #12-03340, (12-03357), 14-03017, (12-03226), and 09-36472.
Additionally, in case #12-03347, counts II and IV which are to be heard in the US District Court per Final Pre Trial order dated 1/31/2015, Doc 78 will be dismissed.

3. Bankruptcy Trustee will have removed a "Claim of Interest" filed by BARBARA DUGGAN 5/5/2012 and recorded 5/3/12 in the Livingston County Register of deeds liber 2012R-01343

4. Pending final approval of this agreement and purchase agreement SAM SWEET will have trials scheduled for June 11, 2018 indefinitely adjourned.

5. Upon acceptance of this agreement by Sam Sweet, all restrictions against Diana Gentry and Gentry Sales Inc to use, move, maintain, sell, or repair any other incidental activities of any and all kind of the equipment listed in current bankruptcy court filings shall be removed.

6. Upon acceptance of this agreement by Sam Sweet, Gentry Sales Inc will order a proper title search on 1011 Jones Road through Select Title Agency, Brighton, MI and charge of same to be paid by Bankruptcy Court upon close of sale.

The herein agreement, upon its execution by both parties, is herewith made an integral part of the aforementioned Agreement of Sale.

DATED: 5-17-18  TIME: 3 p.m.        DATED: _____ TIME: _____

Purchaser _____ [signatures]        Seller _____ [signature]

Purchaser _____ [signatures]        Seller _____

Witness        Agent Witness        Agent

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

2/85                                                                Form 4

## ADDENDUM #2

In reference to the ☒ PURCHASE AGREEMENT, ☐ EXCHANGE AGREEMENT, ☐ LEASE, ☐ COUNTER OFFER- covering the ☐ real property, ☐ business, ☐ premises - commonly known as __1011 JONES ROAD HOWELL MI 48855__

dated __05/17/18__, between __GENTRY SALES INC__ and __EASTERN MICHIGAN BANKRUPTCY COURT__

the undersigned parties hereby agree as follows:
Purchaser shall be allowed 30 days from final acceptance of the agreement to obtain cash funds from private party or other sources to make this a cash sale.
If funds are not available within 30 days of acceptance of this purchase agreement the sale will be a land contract sale with the sum of $5000 down and balance of $60,000 to be paid in full within 1 year of final approval of sale calling for interest only payments of $300 per month at 6% interest payable to Bankruptcy Trustee SAM SWEET.

The herein agreement, upon its execution by both parties, is herewith made an integral part of the aforementioned Agreement of Sale.

DATED: 5-17-18  TIME: 3 pm   DATED: _____ TIME: _____
_[signature] Gentry Sales Inc_ Purchaser  _____ Seller
_By [signature]_ Purchaser  _____ Seller
Witness _[signature]_ Agent  Witness _____ Agent

2/95                                                                 Form 4

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.
20-03012-dof   Doc 50-3   Filed 10/13/20   Entered 10/13/20 15:59:58   Page 8 of 14



## COVENANT DEED

KNOW ALL MEN BY THESE PRESENTS: That Wells Fargo Bank, N.A. as Trustee for First Franklin Mortgage Loan Trust 2006-FF15, Mortgage Pass-Through Certificates, Series 2006-FF15, by its Attorney in Fact Select Portfolio Servicing whose address is 3815 SW Temple Salt Lake City, Utah 84115 covenants that it is seized of said land and has a right to convey it, conveys to:.

Christopher Wyman

Whose Address is: ___

The Following described premises situated in the Township of Cohoctah, Livingston County, and State of Michigan, to-wit:

Part of the Southwest 1/4 of Section 24, Town 4 North, Range 4 East, and part of the Northwest 1/4 of Section 25, Town 4 North, Range 4 East, more particularly described as follows: Commencing at the Southwest corner of said Section 24; thence North 03 degrees 46 minutes 16 seconds West 1298.63 feet (previously recorded as North 00 degrees 45 minutes 00 seconds West 1298.33 feet); thence along the centerline of Jones Road (66 foot wide Right of Way), North 88 degrees 04 minutes 34 seconds East 183.87 feet (previously recorded as South 89 degrees 29 minutes 00 seconds East 184.60 feet) to the Point of Beginning of the parcel to be described; thence continuing along said line North 88 degrees 04 minutes 34 seconds East (previously recorded as South 89 degrees 25 minutes 00 seconds East) 331.21 feet; thence South 01 degree 58 minutes 26 seconds East 1324.84 feet; thence South 88 degrees 10 minutes 34 seconds West 331.21 feet; thence North 01 degree 58 minutes 26 seconds West 1324.26 feet to the Point of Beginning, subject to the rights of the public over the existing Jones Road. Also subject to any other easements or restriction of record.

-More commonly known as: 1011 E Jones Rd, Howell, MI 48855

Individual services may be waived by the seller through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

## BUYER'S AGENTS

A buyer's agent, under a buyer's agency agreement with the buyer, acts solely on behalf of the buyer. A subagent of the buyer is one who has agreed to work with the buyer's agent with who, like the buyer's agent, acts solely on behalf of the buyer. Buyer's agents and their subagents will disclose to the buyer known information about the seller which may be used to benefit the buyer.

Individual services may be waived by the buyer through execution of a limited service agreement. Only those services set forth in paragraph (2)(b), (c), and (d) above may be waived by the execution of a limited service agreement.

## DUAL AGENTS

A real estate licensee can be the agent of both the seller and the buyer in a transaction, but only with the knowledge and informed consent, in writing, of both the seller and the buyer.

In such a dual agency situation, the licensee will not be able to disclose all known information to either the seller or the buyer. As a dual agent, the licensee will not be able to provide the full range of fiduciary duties to the seller or the buyer.

The obligations of a dual agent are subject to any specific provisions set forth in any agreement between the dual agent, the seller and the buyer.

## TRANSACTION COORDINATOR

A transaction coordinator is <u>a licensee who is not acting as an agent of either the seller or the buyer</u>, yet is providing services to complete a real estate transaction. The transaction coordinator is not an agent for either party and therefore owes no fiduciary duty to either party.

## DESIGNATED AGENCY

A buyer or seller with a designated agency agreement is represented only by agents specifically named in the agreement. Any agents of the firm not named in the agreement do not represent the buyer or seller. The named "designated" agent acts solely on behalf of his or her client and may only share confidential information about the client with the agent's supervisory broker who is also named in the agreement. Other agents in the firm have no duties to the buyer or seller and may act solely on behalf of another party in the transaction.

## LICENSEE DISCLOSURE (Check one)

I hereby disclose that the agency status of the licensee named below is:

- [X] Seller's agent
- [ ] Seller's agent – limited service agreement
- [ ] Buyer's agent
- [ ] Buyer's agent – limited service agreement
- [ ] Dual agent
- [ ] Transaction coordinator <u>(A licensee who is not acting as an agent of either the seller or the buyer.)</u>
- [ ] None of the above

## AFFILIATED LICENSEE DISCLOSURE (Check one)

- [ ] Check here if acting as a designated agent. Only the licensee's broker and a named supervisor broker have the same agency relationship as the licensee named below. If the other party in a transaction is represented by an affiliated licensee, then the licensee's broker and all named supervisory brokers shall be considered disclosed consensual dual agents.

- [ ] Check here if not acting as a designated agent. All affiliated licensees have the same agency relationship as the licensee named below.

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.   Instanet Forms

Further, this form was provided to the buyer or seller before disclosure of any confidential information.

_Diana [signature]_        5-17-18
Licensee        Date

_____        _____
Licensee        Date

## ACKNOWLEDGMENT

By signing below, the parties acknowledge that they have received and read the information in this agency disclosure statement and acknowledge that this form was provided to them before the disclosure of any confidential information. **THIS IS NOT A CONTRACT.**

The undersigned ____ DOES ____ (DOES NOT) have an agency relationship with any other real estate licensee. If an agency relationship exists, the undersigned is represented as ____ SELLER ✓ BUYER.

_[signature]_        5-17-18
Potential ☑ Buyer / ☐ Seller (circle one)        Date

_[signature]_        6/9/18
Potential ☐ Buyer / ☑ Seller (circle one)        Date

> **Disclaimer** This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.

Form K ©1995 Michigan Association of REALTORS®, revised 06/2011. P.O. Box 40725, Lansing, MI 48901-7925 Ph. 800.454.7842 Fax 517.334.5568

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.    Instanet Forms




## LEAD-BASED PAINT SELLER'S DISCLOSURE FORM

Property Address __1011 JONES ROAD__
                 Street
__HOWELL__                                           __MICHIGAN__   __48855__
City, Village, Township

**Lead Warning Statement**
Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**I. Seller's Disclosure (initial)**

____ (a) Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):
_____
_____
_____

☒ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

____ (b) Records and reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):
_____
_____

☒ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Seller certifies that to the best of his/her knowledge, the Seller's statements above are true and accurate.

Seller(s) _[signature]_  6/4/18

Date: _____

Date: _____

**II. Agent's Acknowledgment (initial)**

_DL_ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

Agent certifies that to the best of his/her knowledge, the Agent's statement above is true and accurate.

Date: __5-17-18__   Agent _[signature]_

**III. Purchaser's Acknowledgment (initial)**

_X_ (a) Purchaser has received copies of all information listed above.

____ (b) Purchaser has received the federally approved pamphlet *Protect Your Family From Lead In Your Home*.

____ (c) Purchaser has (check one below):

☐ Received a 10-day opportunity (or other mutually agreed upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

☒ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Purchaser certifies to the best of his/her knowledge, the Purchaser's statements above are true and accurate.

Date: __5-17-18__   Purchaser(s) _Gentry Sales Inc_
                                 _by Diana [signature]_

Date: _____

FORM L-3, ©1996 Michigan Association of REALTORS®, 10/96



**MICHIGAN ASSOCIATION OF REALTORS**

## Seller's Disclosure Statement

**H**

**Property Address:** 1011 JONES ROAD     HOWELL     **MICHIGAN**
Street     City, Village or Township

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific area related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitution for any inspections or warranties the Buyer may wish to obtain.

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or the Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. This information is a disclosure only and is not intended to be a part of any contract between Buyer and Seller.

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE A PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/Systems/Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

| | Yes | No | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|---|
| Range/oven | | | | | Lawn sprinkler system | | | | |
| Dishwasher | | | | | Water heater | | | | |
| Refrigerator | | | | | Plumbing system | | | | |
| Hood/fan | | | | | Water softener/ conditioner | | | | |
| Disposal | | | | | | | | | |
| TV antenna, TV rotor & controls | | | | | Well & pump | | | | |
| | | | | | Septic tank & drain field | | | | |
| Electric System | | | | | Sump pump | | | | |
| Garage door opener & remote control | | | | | City water system | | | | |
| Alarm system | | | | | City sewer system | | | | |
| Intercom | | | | | Central air conditioning | | | | |
| Central vacuum | | | | | Central heating system | | | | |
| Attic fan | | | | | Wall furnace | | | | |
| Pool heater, wall liner & equipment | | | | | Humidifier | | | | |
| Microwave | | | | | Electronic air filter | | | | |
| Trash compactor | | | | | Solar heating system | | | | |
| Ceiling fan | | | | | Fireplace & chimney | | | | |
| Sauna/hot tub | | | | | Wood burning system | | | | |
| Washer | | | | | Dryer | | | | |

(handwritten across form: "Seller did not live in home")

Explanations (attach additional sheets, if necessary): _____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**Property conditions, improvements & additional information:**
1. Basement/Crawlspace: Has there been evidence of water?     yes ____ no ____
   If yes, please explain: _____
2. Insulation: Describe, if known: _____
   Urea Formaldehyde Foam Insulation (UFFI) is installed?    unknown ____ yes ____ no ____
3. Roof: Leaks?     yes ____ no ____
   Approximate age, if known: _____
4. Well: Type of well (depth/diameter, age and repair history, if known): _____
   Has the water been tested?     yes ____ no ✓
   If yes, date of last report/results: _____

PAGE 1 OF 2     BUYER'S INITIALS ____

FORM H JAN/06     SELLER'S INITIALS ____

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited. 

## Seller's Disclosure Statement

**Property Address:** 1011 JONES ROAD     HOWELL     MICHIGAN
                                     Street                                                      City, Village or Township

5. Septic tanks/drain fields: Condition, if known: _____
6. Heating system: Type/approximate age: _____
7. Plumbing system: Type: copper _____ galvanized _____ other _____
   Any known problems? _____
8. Electrical system: Any known problems? _____
9. History of infestation, if any: (termites, carpenter ants, etc.) _____
10. Environmental problems: Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on property.
                                         unknown _____ yes _____ no _____
    If yes, please explain: _____
11. Flood Insurance: Do you have flood insurance on the property?    unknown _____ yes _____ no _____
12. Mineral Rights: Do you own the mineral rights?    unknown _____ yes _____ no _____

**Other Items:** Are you aware of any of the following:
1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property?    unknown _____ yes _____ no _____
2. Any encroachments, easements, zoning violations or nonconforming uses?    unknown _____ yes _____ no _____
3. Any "common areas" (facilities like pools, tennis courts, walkways or other areas co-owned with others), or a homeowners' association that has any authority over the property?    unknown _____ yes _____ no _____
4. Structural modifications, alterations or repairs made without necessary permits or licensed contractors?    unknown _____ yes _____ no _____
5. Settling, flooding, drainage, structural or grading problems?    unknown _____ yes _____ no _____
6. Major damage to the property from fire, wind, floods, or landslides?    unknown _____ yes _____ no _____
7. Any underground storage tanks?    unknown _____ yes _____ no _____
8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.?    unknown _____ yes _____ no _____
9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge?    unknown _____ yes _____ no _____
10. Any outstanding municipal assessments or fees?    unknown _____ yes _____ no _____
11. Any pending litigation that could affect the property or the Seller's right to convey the property?    unknown _____ yes _____ no _____

[Handwritten across form: "Seller has not lived in the property"]

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____

The Seller has lived in the residence on the property from _____ (date) to _____ (date).
The Seller has owned the property since _____ (date).
The Seller has indicated above the conditions of all the items based on information known to the Seller. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

Seller certifies that the information in this statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature.

**BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSUALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.**

BUYERS ARE ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28.721 TO 28.732 IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.

BUYER IS ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION, AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.

Seller: [signature]      Date: 6/14/18
Seller: _____      Date: _____

Buyer has read and acknowledges receipt of this statement.
Buyer: [signature] Century Sales Inc      Date: 5-17-18    Time: 3 pm
Buyer: [signature], President      Date: _____    Time: _____

Disclaimer: This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of form for misrepresentation or for warranties made in connection with the form.